IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
At Charleston

**ERIE INSURANCE PROPERTY AND**
**CASUALTY COMPANY,**

         **Plaintiff,**

v.          **CIVIL ACTION NO.:** 2:18-cv-01422

**INEZ LEWIS, in her individual capacity and as**
**Administratrix of the ESTATE OF TIMOTHY**
**JASON LEWIS, HOPE CLINIC, PLLC, a**
**West Virginia limited liability company, JAMES**
**H. BLUME, JR., D.O., TERESA EMERSON, FNP,**
**MARK A. CLARKSON, D.O., PAUL W. BURKE, JR., M.D.**
**And CROSS LANES FAMILY PHARMACY LLC**
**& POCA VALU RITE PHARMACY,**

         **Defendants.**

**COMPLAINT FOR DECLARATORY RELIEF**

      COMES NOW the Plaintiff, Erie Insurance Property and Casualty Company (hereinafter "Erie"), by and through its attorneys, Michelle E. Gaston, Esquire and the law firm of Steptoe & Johnson PLLC, and for its Complaint for Declaratory Relief, states as follows:

      1.      This action is instituted pursuant to the provisions of W.Va. Code §§ 55-13-1, *et seq.*, known as the Uniform Declaratory Judgments Act and 28 U.S.C. § 2201 regarding declaratory judgments.

      2.      Erie Insurance Property and Casualty Company is a corporation with its principal place of business located in the State of Pennsylvania and is licensed to do business in the State of West Virginia.

      3.      Inez Lewis, in her individual capacity and as Administratrix of the Estate of The Estate of Timothy Jason Lewis, is a resident of Floyd County, Kentucky.

      4.      Hope Clinic, PLLC is a West Virginia professional limited liability company.

      5.      James H. Blume, Jr., D.O. is, upon information and belief, is a citizen and resident of Summers County, West Virginia.

      6.      Teresa Emerson, FNP is, upon information and belief, a citizen and resident of Prince William County, Virginia.

7. Mark a. Clarkson, D.O. is, upon information and belief, a citizen and resident of Mercer County, West Virginia.

8. Paul W. Burke, Jr., M.D. is, upon information and belief, a citizen and resident of Jackson County, West Virginia.

9. Cross Lanes Family Pharmacy LLC & Poca Valu Rite Pharmacy LLC is a West Virginia professional limited liability company.

10. Upon information and belief, the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00). *See Erie Ins. Prop. and Cas. Co. v. Smith*, 2006 WL 2591127 (S.D.W.V. 2006) (Amount in controversy is value of underlying claim including pecuniary result to either party).

11. Cross Lanes Family Pharmacy LLC & Poca Valu Rite Pharmacy LLC purchased a policy of commercial general liability insurance, policy number Q446390038, from Erie, which policy canceled on or about February 24, 2016. [Policy, attached hereto as Exhibit A].

12. Inez Lewis, in her individual capacity and as Administratrix of the Estate of Timothy Jason Lewis, brought suit against Cross Lanes Family Pharmacy LLC & Poca Valu Rite Pharmacy LLC and others (hereinafter the "Lewis Litigation") following the May 4, 2017 death of Timothy Jason Lewis. [Civil Complaint, attached hereto as Exhibit B].

13. The Civil Complaint alleges that "[b]eginning in 2014" the decedent, "Timothy Lewis[,] was continuously prescribed Oxycodone 20mg, Oxycodone 30mg, and Methadone HCL 10mg by the Medical Defendants." [Exhibit B at ¶ 28].

14. The Civil Complaint Plaintiff notes that "Oxycodone and Methadone HCL . . . are opioid analgesics and used to treat severe pain" and "are highly addictive and potentially lethal." [Exhibit B at ¶ 29].

15. The Lewis Litigation alleges that "the Pharmacy Defendants [including Cross Lanes Family Pharmacy LLC & Poca Valu Rite Pharmacy LLC] failed to report suspicious prescription activity to the West Virginia Board of Pharmacy and/or federal regulatory agencies." [Exhibit B at ¶ 31].

16. The Civil Complaint contends that "the Pharmacy Defendants" filled the decedent's prescriptions "without a medically necessary purpose". [Exhibit B at ¶ 33].

17. According to the Lewis Litigation, because of the "Defendants' negligent acts and omissions including . . . filling prescriptions for highly addictive and potentially lethal drugs without a medically necessary purpose for doing so, Mr. Lewis became addicted to opioids." [Exhibit B at ¶ 34].

18. The Lewis Litigation alleges that Mr. Lewis' opioid addiction rendered him unable "to maintain gainful employment and his health deteriorated." [Exhibit B at ¶ 35].

19. The Civil Complaint states that "[o]n May 4, 2017, and as a direct and proximate result of Defendants' negligent acts and omissions, Mr. Lewis overdosed on opioids and died from multi-drug toxicity." [Exhibit B at ¶ 36].

20. The Civil Complaint alleges, as against Cross Lanes Family Pharmacy LLC & Poca Valu Rite Pharmacy LLC, "negligence/violation of the West Virginia Medical Professional Liability Act" and a standalone count for punitive damages.

21. Cross Lanes Family Pharmacy LLC & Poca Valu Rite Pharmacy LLC has sought the defense of, and indemnification for, the Lewis Litigation under the Erie insurance policy.

22. As amended, the insuring clause of the subject policy states:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages, including punitive or exemplary damages to the extent allowed by law, because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply. We may, at our discretion, investigate any 'occurrence' and settle any claim or 'suit 'that may result: But:
>
> 1) The amount we will pay for damages is limited as described in Section **III** – Limits of Insurance; and
>
> 2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**
>
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**
>
> b. This insurance applies to 'bodily injury' and 'property damage' only if:
>
> 1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'; and
>
> 2) The 'bodily injury' or 'property damage' occurs during the policy period.

    c. Damages because of 'bodily injury' include damages claimed by any person or organization for care, loss of services or death resulting at any time from the bodily injury.

[Exhibit A at PK-GN (Ed. 1/10)].

  23. "Bodily injury" is defined by the Erie policy as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." [Exhibit A at CG 00 01 (Ed. 4/13) at 12].

  24. "Property damage" is defined by the Erie policy as:

    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it.

    For the purpose of this insurance, electronic data is not tangible property.

    As used in this definition, electronic data means information, facts, or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

[Exhibit A at CG 00 01 (Ed. 4/13) at 14].

  25. "Occurrence" is defined by the Erie policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."[Exhibit A CG 00 01 (Ed. 4/13) at 13].

  26. The insuring clause of the Erie policy was further amended by the addition into the insuring agreement of the "Druggists Professional Liability" endorsement, which states:

    We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies arising out of the rendering of or failure to render 'pharmacy services' in connection with the named insured's practice of pharmacy, but only in the operation of your retail pharmacy. The 'bodily injury' or 'property damage' shall be deemed to be caused by an 'occurrence'.

[Exhibit A at PK-KF (Ed. 6/13)].

27. According to the Erie policy:

> 'Pharmacy services' means the art, practice, or profession of preparing, preserving, compounding, and dispensing medicines, medical drugs, supplies, equipment, or devices used in the treatment of medical disorders and maladies rendered by the insured in the capacity of a retail pharmacist or pharmacy.
>
> 'Pharmacy services' also include services by the insured as a member of a formal accreditation, standards review, or similar professional board or committee.
>
> 'Pharmacy services' does not include 'manufacturing'.

[Exhibit A at PK-KF (Ed. 6/13)].

28. There is no coverage under the Erie policy for any "bodily injury" or "property damage" that occurred outside of a policy period.

29. The Lewis Litigation does not allege "property damage" covered by the Erie policy.

## COUNT I -- DECLARATORY RELIEF

30. Erie reincorporates by reference the statements and allegations contained in paragraphs 1 through 29 of its request for Declaratory Relief.

31. Erie seeks a declaratory judgment against the other parties to the effect that Erie is not required to provide coverage under the subject policy for the alleged claims and damages of the Lewis Litigation and, further, to the effect that Erie does not have the duty to defend or indemnify its insured of and from the Lewis Litigation.

## COUNT II -- ATTORNEY FEES and COSTS

32. Erie reasserts the statements and allegations contained in paragraphs 1 through 31 of its request for Declaratory Relief.

33. W. Va. Code § 55-13-10 provides, "in any proceeding under this article, the Court may make such award of costs as may seem equitable and just."

34. The United States Code permits a discretionary award of "[f]urther necessary or proper relief" following a favorable decision in a declaratory judgment action.  28 U.S.C. § 2202.

35. Erie submits that a discretionary award of attorney fees and costs in prosecuting this declaratory judgment action is appropriate.

WHEREFORE Erie respectfully requests the following relief:

(1) A declaration as to the nonexistence of coverage for the defense and indemnification for the claims and damages as set forth in the Lewis Litigation;

(2) That Erie be awarded its attorney's fees and costs in prosecuting this action; and

(3) That Erie be awarded any and all other further relief that this Court deems just and proper.

                                                           **ERIE INSURANCE PROPERTY AND CASUALTY COMPANY,**

                                                           **By Counsel**

| | |
|---|---|
| STEPTOE & JOHNSON PLLC<br>Of Counsel | /s/Michelle E. Gaston<br>Michelle E. Gaston, Esq. (WVSB #7494)<br>P.O. Box 1588<br>Charleston, WV  25326-1588<br>Telephone:  304-353-8000<br>Telecopier:  304-353-8180<br>michelle.gaston@steptoe-johnson.com |